IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JOSEPH RODRIGUEZ, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSAL PRESSURE PUMPING, INC.,<br><br>Defendant. | Civil Action No. 4:23-cv-2716<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

1. Plaintiff Joseph Rodriguez, as well as all others similarly situated, are current and former employees of Defendant Universal Pressure Pumping, Inc. ("UPP") who live and work at UPP's worksites for "hitches" that last between approximately 7 and 14 days at a time (collectively, "hitch workers"). Plaintiff brings this action on behalf of himself and all others similarly situated because UPP has underpaid its hitch workers' overtime by willfully failing to incorporate their "overnight *per diem*" into its calculation of the "regular rate at which [the hitch workers are] employed," and because UPP has repeatedly failed to pay the hitch workers timely. *See* 29 U.S.C. §§ 207(a)(1), 206(a). Plaintiff Rodriguez and all others similarly situated seek a declaratory judgment under 28 U.S.C. § 2201 and back pay, liquidated damages, attorneys' fees and costs, and other relief under the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. § 201 *et seq*.

2. The hitch workers are similarly situated in accordance with 29 U.S.C. § 216(b) of the FLSA because, while employed by UPP, they have all, as a matter of UPP practice or policy: (1) worked overtime, and (2) received an "overnight *per diem*," which UPP failed to properly factor into its calculation of their regular rate. Furthermore, upon information and belief, hitch

1

workers all had their time and pay administered with the same Oracle Timekeeping and Payroll software that failed to properly record their hours and pay them their overtime pay timely.

## JURISDICTION AND VENUE

3. Jurisdiction is conferred on this Court by 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

4. Venue is proper in this district under 28 U.S.C. § 1391, because it is the district in which Defendant resides.

## PARTIES

5. The Plaintiff identified in the caption has given his written consent to be a party Plaintiff in this action pursuant to 29 U.S.C. § 216(b). His written consent, which sets forth his name and address, is appended to this Complaint as Exhibit A.

6. Plaintiff Joseph Rodriguez has been employed by UPP as a hitch worker in a Parts Coordinator position since October 2022 at its Midland, Texas location: 4517 W. Industrial Ave., Midland, TX 79703.

7. While employed by UPP, the Plaintiff has been an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

8. Defendant UPP is a Delaware corporation, and, upon information and belief, maintains its Headquarters and Principal Executive Offices at 10713 W. Sam Houston Pkwy N., Suite 800, Houston, Texas 77064. It may be served with process via its Registered Agent, Capitol Corporate Services, Inc., at 1501 S. Mopac Expy., Suite 220, Austin, TX 78746.

9. At all times material to this action, UPP has been an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d), as well as a "person" within the meaning of 29 U.S.C. § 203(a).

10. At all times material to this action, UPP has been an enterprise engaged in commerce as defined by 29 U.S.C. §§ 203(r)(1) and (s)(1).

11. At all times material to this action, UPP's annual dollar business volume has exceeded $500,000.

## FACTS

12. UPP provides fracking services, equipment, and support in and around Midland, Texas, as well as in other locations throughout Texas and the United States, including in New Mexico, Oklahoma, Ohio, Pennsylvania, and West Virginia.[1]

13. Because of the manpower needed to maintain its fracking operations, which operate 24/7, and the distance of these operations from population centers, UPP often hires employees who live far from its worksites, and therefore must stay at, or near, the worksites in order to be available for their shifts—the hitch workers.

14. Plaintiff Joseph Rodriguez is one such hitch worker. He lives in El Paso, but drives to Midland to work for UPP. There, he works as an hourly paid Parts Coordinator in the parts department of one of UPP's motor pools, supporting the constant maintenance and repair of the company's fracking trucks and equipment so that UPP's operations are not interrupted.

15. Plaintiff works a "10-4" schedule—that is to say, he spends a continuous 10-day hitch working and sleeping at the worksite, followed by 4 days off. Hitch workers who receive the overnight per diem may work a 10-4 schedule or another overnight schedule such as a 7-7 schedule, which would be a continuous 7-day hitch working and sleeping at the worksite followed by 7 days off. No matter the hitch schedule, upon information and belief, the overnight per diem is not included in the regular rate of pay for purposes of calculating overtime pay.

16. Hitch workers are paid hourly.

---

[1] Universal Pressure Pumping, ABOUT US – CURRENT FOOTPRINT, available at https://patenergy.com/services/universal-pressure-pumping/about-us/ (last accessed July 12, 2023).

17. Hitch workers may work either a day shift or a night shift. The shifts are 12 hour shifts. Often, they work either a day or night shift for the entirety of a hitch, although that is not guaranteed.

18. For example, Plaintiff Rodriguez works a 10-4 schedule, and largely switches day and night shifts every two hitches.

### UPP'S FAILURE TO INCORPORATE THE OVERTIME *PER DIEM* INTO THE HITCH WORKERS' REGULAR RATE

19. Under the FLSA, employees working more than 40 hours in a week must be compensated at "a rate not less than one and one-half times the *regular rate* at which [they are] employed." 29 U.S.C. § 207(a)(1) (emphasis added). This "regular rate" therefore provides the basis for employees' overtime calculations, and it must "include all remuneration for employment paid to . . . the employee." 29 U.S.C. § 207(e).

20. For each night that hitch workers spend at the worksite—regardless of whether they are working a day shift or night shift—they receive what UPP calls an "overnight *per diem*."

21. Upon information and belief, this overnight *per diem* is a lump sum paid to hitch workers based on the number of nights they spent at the worksite.

22. The overnight *per diem* is not paid for any expense incurred by hitch workers on UPP's behalf for UPP's benefit or convenience.

23. UPP does not ask or require the hitch workers to submit receipts, logs, or any form of documentation whatsoever in order to receive the overnight *per diem*; hitch workers are paid the same amount no matter their expenses.

24. This "overnight *per diem*" does not reimburse hitch workers for lodging expenses: during their on-duty time, hitch workers stay at shared hotel rooms or a "man camp" provided by

4

UPP. A "man camp" is, in effect, a dormitory complex. Hitch workers often share rooms, and bathrooms, with each other.

25. Nor does the overnight *per diem* reimburse hitch workers for food—for example, the man camps contain cafeterias that provide hitch workers with meals free of charge.

26. The overnight *per diem* is not a mileage reimbursement for the drive to the site, either: it is not paid at a per-mile rate, and its value does not fluctuate with the distance a hitch worker travels, the price of gas, the number of times a hitch worker drives to the site during a hitch, or any other relevant variables.

27. Instead, the purpose of the overnight *per diem* is to compensate hitch workers for the inconvenience of spending the night at the worksite.

28. Nevertheless, UPP does not include the overnight *per diem* in hitch workers' regular rate of pay when it calculates their overtime rate.

29. For example, Plaintiff Rodriguez worked 122.63 hours in the pay period spanning April 10, 2023 to April 23, 2023. For this, he was compensated at a rate of $20 per hour for his regular base wage, and $30 per hour for the 42.63 hours that he worked over 40 per week. He was also paid $550 for his overnight *per diem*.

30. Notably, the $30 overtime rate is merely 1.5 times Plaintiff Rodriguez's $20 base hourly rate; it does not take into account the overtime *per diem*.

31. Defendant has been sued at least once before for failing to properly include a lump-sum payment in its calculation of its employees' regular rate of pay. *See Washington v. Patterson-UTI Energy, Inc., et al.*, No. 5:16-CV-130-RP, 2016 WL 3081060, at *1 (W.D. Tex. May 31, 2016).

32. The Department of Labor has provided clear guidance on how to calculate the regular rate of pay, explaining, *inter alia*, that it must include "all remuneration for employment

5

paid to, or on behalf of, the employee." *See* 29 CFR § 778.108 (quoting 29 U.S.C. § 207(e)); 29 CFR § 778.200, *et seq*.

33. Defendant is aware or should have been aware that federal law required it to incorporate the overnight *per diem* into the hitch workers' rate of pay.

34. Defendant's failure to include the overnight *per diem* in the calculation of the hitch workers' regular rate of pay is willful, as evidenced by these and other facts.

## **LATE PAYMENT**

35. Upon information and belief, UPP routinely fails to pay hitch workers their overtime pay on the pay date for the pay period in which the work to be compensated was performed.

36. UPP often does not correct this failure unless prompted to do so by its employees.

37. For example, since he began monitoring his paycheck for pay issues several months ago, Plaintiff Rodriguez has, on at least three occasions, noted discrepancies of at least five hours between the hours he worked and the hours recorded in the Oracle Pay and Timekeeping system used to administer his pay. The first two times, Plaintiff Rodriguez did not notice the discrepancy until after he was paid.

38. On each of these two occasions, UPP had to provide Plaintiff Rodriguez with supplemental checks to correct the pay issue. Defendant did not, however, provide him these checks immediately upon his bringing the issue to its attention. Rather, UPP informed Plaintiff Rodriguez that he would need to wait until at least a week after the pay date on which these overtime wages should have been paid to receive the supplemental check.

39. On a third occasion, Plaintiff Rodriguez—having begun to affirmatively monitor his hours due to the prior incidents—caught the mistake before his pay date, and it was fortunately corrected.

40. Plaintiff Rodriguez raised these issues with Kathy Phillips, an Associate Senior Administrator who, in his understanding, was responsible for payroll at the Midland site where he worked. Nevertheless, upon information and belief, UPP has taken no steps to remedy this problem, nor even acknowledged the affirmative request that Plaintiff Rodriguez made on July 5, 2023 that UPP take steps to avoid such pay failures going forward.

41. Upon information and belief, Plaintiff Rodriguez is not the only hitch worker to have experienced such pay issues and subsequent late payments. The pay issues are not limited to the Parts Department where Plaintiff Rodriguez works, and he is not the only hitch worker to have raised these issues with a superior.

42. UPP is either aware or should have been aware that federal law requires it to pay its employees their overtime pay timely.

43. UPP's failure to timely pay its employees overtime pay is willful, as evidenced by these and other facts.

## FLSA COLLECTIVE ACTION

44. Plaintiff Rodriguez brings these FLSA claims as a collective action, pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of all individuals nationwide who, at any time since July 24, 2020 have been employed by UPP, assigned to a 10-4 or other hitch work schedule, worked overtime, received an overnight *per diem*, and had their pay administered by UPP's Oracle Timekeeping and Payroll software.

45. The hitch workers in this putative collective are all similarly situated because, as a matter of policy or practice, they were all assigned to work by UPP, and did in fact work, the same or similar schedules; because, as a matter of policy or practice, they all stayed overnight at UPP-provided lodging and, for the inconvenience of doing so, were paid an overnight *per diem* which was not included in their regular rates of pay for purposes of calculating overtime pay; because, as a matter of policy or practice, they were all assigned, suffered, or permitted to work by UPP, and did in fact work, overtime that UPP either knew of or should have known of; because, as a matter of policy or practice, they all had their time and pay administered by the same Oracle Timekeeping and Payroll Software which did not pay them overtime pay timely; and because they were all paid hourly.

46. At all times material to this action, upon information and belief, UPP has paid an overnight *per diem* to employees who work 10-4 and other hitch schedules at its worksites across the United States.

47. At all times material to this action, employees receiving an overnight *per diem* have worked more than 40 hours in a given workweek; doing so is inherent in their jobs supporting UPP's 24/7 fracking operations.

48. For example, Plaintiff Rodriguez is expected to work 12 hours a day, or 120 hours in a 10-day hitch.

49. At all times material to this action, UPP has been engaged in a willful, company-wide pattern or practice of failing to include the overnight *per diem* in its calculation of its hitch workers' regular rate for purposes of calculating the overtime pay due.

50. UPP has been, or should have been, aware that it was failing to include overnight *per diem* in its calculation of the hitch workers' regular rate—both the overnight *per diem* and the hitch workers' rates of pay are listed clearly on the hitch workers' paystubs.

51. There are many similarly-situated current and former UPP employees who have been subject to the above violations of the FLSA and who would benefit from the issuance of court-supervised notice of this lawsuit and the opportunity to join it. Employees who meet the above criteria are known to UPP, are readily identifiable, and can be located through UPP's records.

## **COUNT I**
### **Failure to Properly Compute the Regular Rate of Pay under the FLSA**
### **(Brought on behalf of Plaintiff and the FLSA Collective)**

52. Plaintiff Rodriguez realleges and incorporates by reference all allegations in all preceding paragraphs.

53. Defendant has engaged in a willful and widespread pattern and practice of violating the FLSA by failing to incorporate the overnight *per diem* into Plaintiff Rodriguez's and similarly-situated employees' regular rates of pay when calculating the overtime to which they were entitled.

54. At all times material to this action, Plaintiff Rodriguez and similarly-situated employees have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201, *et seq.*

55. At all times material to this action, and prior, Defendant has paid an overnight *per diem* to Plaintiff Rodriguez and similarly-situated employees.

56. At all times material to this action, Defendant has directed Plaintiff Rodriguez and similarly-situated employees to work, and Plaintiff Rodriguez and similarly-situated employees did in fact work, over 40 hours in one or more individual workweeks during which they also received an overnight *per diem*.

57. At all times material to this action, Defendant has consistently denied Plaintiff Rodriguez and similarly-situated employees the full amount of overtime compensation to which they are entitled under the FLSA by failing to properly calculate the regular rate that provides the basis for their time-and-a-half overtime pay. *See* 29 U.S.C. § 207(a) & (e).

58. As such, at all times material to this action, Defendant has failed to meet the FLSA's command that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of those hours . . . at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

59. Defendant's violations of the FLSA as alleged herein have been done in a willful and bad faith manner.

60. As a result of these willful violations of the FLSA, compensation has been unlawfully withheld by Defendant from Plaintiff Rodriguez and similarly-situated employees for which the Defendant is liable pursuant to 29 U.S.C. § 216(b), together with an additional equal amount as liquidated damages, as well as interest, reasonable attorneys' fees, and the costs of this action.

61. The employment and work records for Plaintiff Rodriguez and similarly-situated employees are in the exclusive possession, custody, and control of Defendant, and Plaintiff and those similarly situated are unable to state at this time the exact amount owing to each of them. Defendant is under a duty imposed by 19 U.S.C. § 211(c) and the regulations of the U.S. Department of Labor to maintain and preserve Plaintiff Rodriguez's and similarly-situated employees' payroll and other employment records from which the amounts of Defendant's liability can be ascertained.

## COUNT II
### Failure to Pay Employees Timely under the FLSA
### (Brought on behalf of Plaintiff and the FLSA Collective)

62. Plaintiff Rodriguez realleges and incorporates by reference all allegations in all preceding paragraphs.

63. The FLSA and its accompanying regulations mandate that overtime compensation be paid on the regular payday for the pay period in which the work to be compensated was performed. *See, e.g.*, *In re Tug Robert J. Bouchard Corp.*, No. H-22-3980, 2023 WL 3984198, at *4 (S.D. Tex. June 13, 2023) ("An employer violates . . . the FLSA and exposes itself to § 216(b) liquidated damages when it pays late wages.") (collecting cases); *see also* 29 U.S.C. §§ 203(a), 207(a); 29 C.F.R. § 778.106.

64. UPP's failure to timely pay overtime wages to Plaintiff Rodriguez and similarly-situated employees violates the FLSA.

65. These violations constitute a willful and widespread pattern and practice of FLSA violation.

66. Pursuant to 29 U.S.C. § 216(b), Plaintiff Rodriguez and similarly-situated employees are entitled to recover liquidated damages in an amount equal to their untimely-paid overtime wages. *See, e.g.*, *Thorpe v. Utility Maters, L.L.C.*, No. 4:09-CV-92, 2010 WL 11530466, at *2 (E.D. Tex. July 21, 2010) ("Under the FLSA, an employer's liability becomes fixed, and damages accrue, when the employer fails to pay the employee the required wages on the regular payday for any workweek.").

67. The employment and work records for Plaintiff Rodriguez and similarly-situated employees are in the exclusive possession, custody, and control of Defendant, and Plaintiff Rodriguez and similarly-situated employees are unable to state at this time the exact amount owing

to each of them. Defendant is under a duty imposed by 19 U.S.C. § 211(c) and the regulations of the U.S. Department of Labor to maintain and preserve Plaintiff Rodriguez's and the similarly-situated employees' payroll and other employment records from which the amounts of Defendant's liability can be ascertained.

68.     Plaintiff Rodriquez and similarly-situated employees are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b) in this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court:

(a)     Enter a declaratory judgment declaring that Defendant has willfully and wrongfully violated its statutory and legal obligations and deprived Plaintiff Rodriguez and all others who are similarly situated of their rights, privileges, protections, compensation, benefits, and entitlements under the law, as alleged herein;

(b)     Order a complete and accurate accounting of all the compensation to which the Plaintiff and those similarly situated are entitled;

(c)     Award Plaintiff and those similarly situated monetary damages in the form of back pay for their unpaid compensation;

(d)     Award Plaintiff and those similarly situated monetary liquidated damages equal to their unpaid and late paid compensation;

(e)     Award Plaintiff and those similarly situated interest on their unpaid compensation;

(f)     Award Plaintiff and those similarly situated their reasonable attorneys' fees to be paid by the Defendant, and the costs and disbursements of this action; and

(g)     Grant such other relief as may be just and proper.

## **DEMAND FOR A JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Rodriguez and all others similarly-situated hereby demand that their claims be tried before a jury.

Respectfully Submitted,

*/s/ Matt Bachop*
Matt Bachop
Texas State Bar No. 24055127
DEATS, DURST & OWEN, P.L.L.C.
8140 N Mopac Expy.
Suite 4-250
Austin, TX 78759
Tel: (512) 474-6200 x1005
Fax: (512) 474-7896
E-mail: mbachop@ddollaw.com

*Attorney-in-Charge for Plaintiff*

Molly A. Elkin *(pro hac vice forthcoming)*
Patrick Miller-Bartley *(pro hac vice forthcoming)*
McGILLVARY STEELE ELKIN LLP
1101 Vermont Ave. NW, Suite 1000
Washington, DC 20005
Tel: (202) 833-8855
Fax: (202) 452-1090
E-mail: mae@mselaborlaw.com
E-mail: smb@mselaborlaw.com

*Of Counsel for Plaintiff*